UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

DAPHNE VAN EVER-FORD,

        Plaintiff,

    v.                                  13-CV-412
                                            DECISION & ORDER

STATE OF NEW YORK, OFFICE OF
MENTAL HEALTH (BUFFALO
PSYCHIATRIC CENTER), and Dr. ANN
MARIE T. SULLIVAN, COMMISSIONER
OF THE OFFICE OF MENTAL HEALTH,
in her official capacity,

        Defendants.

───────────────────────────────

On April 25, 2013, the plaintiff, Daphne Van Ever-Ford, commenced this action

against the State of New York for discrimination on the basis of her disability in violation

of the Americans with Disabilities Act, 42 U.S.C. § 12112, ("ADA").  Docket Item 1.  The

case originally was assigned to United States District Judge Richard J. Arcara, who

referred the matter to United States Magistrate Judge Jeremiah J. McCarthy for all

pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 14.  On

December 5, 2014, the State of New York moved for summary judgment.  Docket Item

25.  On September 21, 2015, Judge McCarthy issued a report and recommendation

("2015 R&R"), recommending that the motion be denied, Docket Item 38, and on

November 30, 2015, Judge Arcara adopted the 2015 R&R, Docket Item 43.

The case was reassigned to this Court on March 8, 2016, and on March 18,

2016, this Court scheduled trial to begin on August 24, 2016.  Docket Item 53.  Van

Ever-Ford submitted a trial brief on July 19, 2016, which explained in a footnote that her

counsel had learned that because of sovereign immunity and the Eleventh Amendment, the State of New York is immune from suit under the ADA. Docket Item 59 at 4 n.1. On August 18, 2016, Van Ever-Ford filed an amended complaint naming the State of New York Office of Mental Health ("Office of Mental Health") as the sole defendant and raising a claim only under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act").[1] Docket Item 64. The Office of Mental Health moved for summary judgment, Docket Item 65, and on October 17, 2016, Judge McCarthy issued another report and recommendation ("2016 R&R"), recommending that the motion be denied, Docket Item 72. On December 21, 2016, this Court heard oral argument on the Office of Mental Health's objections to the 2016 R&R. Docket Item 78.

On June 8, 2017, before this Court had decided whether to adopt the 2016 R&R, Van Ever-Ford moved to amend the complaint again—this time, adding Office of Mental Health Commissioner Ann Marie T. Sullivan ("the Commissioner") in her official capacity as a defendant in a revived ADA claim. Docket Item 82. On September 12, 2017, Judge McCarthy issued a third report and recommendation ("2017 R&R"), recommending that Van Ever-Ford not be given leave to amend the complaint. Docket Item 94. The plaintiff objected to the R&R, Docket Item 95, and, after hearing oral argument, Docket Item 100, this Court granted Van Ever-Ford leave to amend the complaint, Docket Item 101.

---

[1] In response to the Supreme Court's decision in *Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985), Congress passed § 1003 of the Rehabilitation Act Amendments of 1986, Pub. L. No. 99-506, 100 Stat. 1845 (1986), unequivocally expressing its intent to abrogate the states' Eleventh Amendment sovereign immunity for claims under the Rehabilitation Act. *See Lane v. Pena*, 518 U.S. 187, 198 (1996).

On December 22, 2017, Van Ever-Ford filed the operative amended complaint. Docket Item 102. That complaint asserts claims against the Office of Mental Health under Rehabilitation Act § 504 and against the Commissioner under the ADA. *Id.*

On August 16, 2018, the defendants moved for summary judgment. Docket Item 111. Van Ever-Ford responded on September 17, 2018, Docket Item 115, and the defendants replied on September 28, 2018, Docket Item 116. This Court heard oral argument on the motion on November 30, 2018. Docket Item 119.

### FACTS[2]

Van Ever-Ford began working for the Office of Mental Health at the Buffalo Psychiatric Center in January 2010. Docket Items 102 at 2, 107. She worked as a Mental Health Therapy Aid Trainee, which required her to care for seriously-ill mental-health patients. *Id.* Van Ever-Ford typically worked the "midnight shift," between 11:40 p.m. and 7:40 the next morning. Docket Item 102 at 2.

During the course of her employment, Van Ever-Ford suffered from hypertension, heart palpitations, fatigue, kidney stones, migraine headaches, sinusitis, and a hernia. *Id.* at 3. While she was working on the morning of September 26, 2010, Van Ever-Ford suffered an extremely painful headache, and Yvonne Long, the Nurse Administrator, told her that she could go home if she was not feeling well. *Id.* at 3-4, Docket Item 107 at 2. Van Ever-Ford therefore left work, went to the emergency room, and obtained a doctor's note stating that she could return to work two days later. Docket Item 102 at 4.

---

[2] On a motion for summary judgment, the court accepts the facts pleaded by the non-moving party as true and draws all reasonable inferences in favor of that party. *See, e.g.*, *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

She also spoke on the phone with her supervisor, Bill Hoak, and the nurse administrator, Laura Murphy, to tell them she needed the next two days off. *Id.* But Hoak told her that she was already scheduled and needed to return to work that night, September 27, 2010.[3] *Id.*

On September 30, 2010, Van Ever-Ford provided her employer with a doctor's note, excusing her from work until October 2, 2010. *Id.*, Docket Item 107 at 2. She then worked October 2 through October 8, 2010, without further incident or any discussion of her absences. Docket Item 102 at 5.

On October 15, 2010, however, Van Ever-Ford was terminated from employment for violating her employer's time and attendance policy. Docket Items 102 at 2, 107 at 1. She was told that the reason for her termination was excessive time off. Docket Items 102 at 5, 107 at 3. Despite the fact that she had spoken to Mr. Hoak and Ms. Murphy, a report characterized her September 28, 2010 absence as a "no call, no show." Docket Item 102 at 5.

Before filing this action, Van Ever-Ford pursued a disability claim against her employer under the New York State Human Rights Law ("NYSHRL"). On March 9, 2011, she filed a verified complaint with the New York State Division of Human Rights[4] ("Division of Human Rights"). In that complaint, Van Ever-Ford alleged that she was the

---

[3] The defendants deny that this conversation ever took place. Docket Item 107 at 1.

[4] The Division of Human Rights is a New York administrative agency tasked with enforcing the NYSHRL through prosecuting unlawful discriminatory practices, investigating complaints of discrimination, and developing human rights policies for the state. *See Mission Statement*, N.Y. DIV. OF HUMAN RIGHTS, https://dhr.ny.gov/mission-statement (last visited Mar. 1, 2019).

target of discrimination, and terminated from her employment with the Office of Mental Health, "based on a disability that forced [her] to miss work because [her] symptoms and problems interfered with day-to-day living."  Docket Item 112-1 at 3.  Van Ever-Ford also filed her complaint with the Equal Employment Opportunity Commission ("EEOC"), asserting disability discrimination under the ADA.  Docket Item 112-2.  The Office of Mental Health answered Van Ever-Ford's Division of Human Rights complaint on December 2, 2011.  Docket Item 112-3.

On August 24, 2011, the Division of Human Rights found that there was probable cause to support the allegations in Van Ever-Ford's complaint and that material issues of fact required a hearing.  Docket Item 112-4.  On January 23, 2012, Administrative Law Judge ("ALJ") Martin Erazo, Jr., held a public hearing on Van Ever-Ford's Division of Human Rights complaint of disability discrimination.  Docket Item 112-7.  On June 26, 2012, ALJ Erazo issued his "Recommended Findings of Fact, Opinion and Decision, and Order," concluding that Van Ever-Ford "did not meet her burden of proof to show that [the Office of Mental Health] treated her differently, failed to accommodate her, and terminated her employment, because of her disabilities"; the ALJ therefore recommended that the matter be dismissed.  Docket Item 112-8 at 4.  Van Ever-Ford objected to the recommendation, Docket Item 112-9, but on September 13, 2012, the Commissioner of the Division of Human Rights adopted the ALJ's recommended findings, Docket Item 112-10.  On January 24, 2013, the EEOC followed suit and adopted the Division of Human Rights's findings.  Docket Item 102-1 at 7.  Van Ever-Ford then commenced this action.  Docket Item 1.

**DISCUSSION**

The defendants raise three arguments to support their motion for summary judgment. The first two address Van Ever-Ford's claims under the Rehabilitation Act. First, the defendants argue that the Division of Human Rights decision on Van Ever-Ford's NYSHRL claim precludes her Rehabilitation Act claim under the principle of *res judicata*.[5] Docket Item 114 at 6. Second, the defendants argue that even if *res judicata* does not preclude Van Ever-Ford's claims, the principle of *collateral estoppel*[6] precludes her from relitigating the factual issues decided against her in the Division of Human Rights proceeding. *Id.* at 12. The defendants' third argument addresses Van Ever-Ford's ADA claim against the Commissioner. They argue that because the Commissioner does not have the authority to perform the relief sought, the action is not covered by the *Ex parte Young* exception to states' sovereign immunity—the basis for Van Ever-Ford's claim against the Commissioner.

**I.      SUMMARY JUDGMENT STANDARD**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "While genuineness runs to

---

[5] The term "*res judicata*" is generally interchangeable with the term "claim preclusion."

[6] The term *collateral estoppel* is generally interchangeable with the term "issue preclusion."

whether disputed factual issues can 'reasonably be resolved in favor of either party,' materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Anderson*, 477 U.S. at 250). "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor." *Abdu-Brisson*, 239 F.3d at 466. But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

## II.    ANALYSIS

### A.    Rehabilitation Act Claims

The defendants argue that because the Division of Human Rights decided Van Ever-Ford's claims against her after an administrative evidentiary hearing, she is precluded from pursuing her Rehabilitation Act § 504 claims in this Court. For the reasons that follow, this Court agrees.

### 1.    Preclusive Effect of State Administrative Determinations under the Rehabilitation Act

Issue and claim preclusion are rooted in the judicial policy that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S.

90, 94 (1980). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* The Supreme Court has "long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality." *Solimino*, 501 U.S. at 107.

State agency decisions that have been reviewed by a state court typically enjoy preclusive effect in federal court because "[t]he records and judicial proceedings of any court of any such State, Territory or Possession . . . shall have the same full faith and credit in every court within the United States," 28 U.S.C. § 1738. *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982) (holding that a state court decision affirming a state agency determination on a claim of employment discrimination is entitled to preclusive effect). But the decisions of state administrative agencies like the Division of Human Rights, when not reviewed in a state court, may be a different matter. In *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), the Supreme Court applied a two-step inquiry to determine whether a decision by a state administrative body should preclude federal court litigation. The first question is "whether a common-law rule of preclusion would be consistent with Congress' intent." *Elliott*, 478 U.S. at 796. If the answer is yes—that is, if Congress did not intend to abrogate common-law preclusion— the question then becomes whether the agency decision would be entitled to preclusive effect in the courts of that state. *Id.* at 799 ("[W]hen a state agency 'acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate' federal courts must give the agency's factfinding the

same preclusive effect to which it would be entitled in the State's courts.") (quoting *Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)).

In *Elliott*, the Supreme Court held that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims," thereby ending the inquiry for that statute at the first step. *Id.* at 796. The Court reached that holding by inferring congressional intent from the remedies available under Title VII. It turned first to 42 U.S.C. § 2000e-5(b), which requires the EEOC, when investigating claims of discrimination, to give "substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law." 42 U.S.C. § 2000e-5(b). "[I]t would make little sense for Congress to write such a provision," the Court reasoned, "if state agency findings were entitled to preclusive effect in Title VII actions in federal court." *Elliott*, 478 U.S. at 795 (citing *Kremer*, 456 U.S. at 470 n.7). The Court then turned to its holding in *Chandler v. Roudebush*, 425 U.S. 840 (1976), that in Title VII claims the 1972 amendments to the Civil Rights Act of 1964 evidence congressional intent to provide a trial *de novo* in federal court, therefore compelling the conclusion that state agency decisions do not preclude Title VII claims. *See Elliott*, 478 U.S. 795-96; *see also* 42 U.S.C. § 2000e-5(f) ("Civil action by . . . person aggrieved").

In contrast, the *Elliott* court came to the opposite conclusion regarding Congress's intent in passing 42 U.S.C. § 1983. The Court noted that in *Allen v. McCurry*, it found that "nothing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision." 449 U.S. at 103-04. For that reason, there was "no reason to suppose that Congress, in enacting the Reconstruction civil rights statutes, wished to foreclose the adaptation of

9

traditional principles of preclusion to such subsequent developments as the burgeoning use of administrative adjudication in the 20th century." *Elliott*, 478 U.S. at 797.

The Title VII reasoning in *Elliott* has led courts to interpret other federal antidiscrimination statutes in much the same way. In *Solimino*, for example, the Supreme Court held that Congress did not intend unreviewed state agency findings to preclude claims brought under the Age Discrimination in Employment Act ("ADEA") because that statute requires plaintiffs to exhaust state remedies and uses the termination of state proceedings to set filing deadlines. 501 U.S. 104 at 111. And while the Supreme Court has not yet addressed the preclusive effect of unreviewed state administrative findings under the ADA, almost every court of appeals to do so has found no such preclusion because the enforcement remedies in Title I of the ADA are the same as those in Title VII.[7] *See Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 827-28 (6th Cir. 2013) ("using *Elliott* and *Solimino* as a guide, we find that common law collateral estoppel principles do not apply to claims brought under the ADA because . . . the ADA explicitly incorporates all of the enforcement powers, remedies, and procedures of Title VII."); *Joseph v. Athanasopoulos*, 648 F.3d 58, 64 n.6 (2d Cir. 2011) ("we are aware of no distinction between [Title VII and the ADA] that would require affording a state court judgment a different preclusive effect."); *Stone v. Dep't of Aviation*, 290 F. App'x 117, 122-23 (10th Cir. 2008) (finding that *Elliott* governs both Title VII and ADA claims); *Staats v. Cty. of Sawyer*, 220 F.3d 511, 514 (7th Cir. 2000) ("Although [the plaintiff's] claims arise under the ADA and the Rehabilitation Act, not

_____

[7] The well-settled law on this point is likely why the defendants have argued that Van Ever-Ford's Division of Human Rights proceeding bars only her Rehabilitation Act claims, not her ADA claims.

Title VII, we think the logic of *Kremer* and *Elliott* applies equally to other federal anti-discrimination statutes."); *Medeiros v. City of San Jose*, 1999 WL 613405, at *1 (9th Cir. Aug. 12, 1999) ("Unreviewed state agency findings are not afforded preclusive effect in ADA actions."); *Thomas v. Contoocook Valley Sch. Dist.*, 150 F.3d 31, 39 n.5 (1st Cir. 1998) ("the plaintiff has brought her claim under the ADA, but this distinction is of little moment: the ADA incorporates the same Title VII deferral procedures, *see* 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e–5), on which the Supreme Court relied in *Kremer* and *Elliott*; therefore, those holdings apply with equal force in the ADA context."); *but see Summerville v. Trans World Airlines, Inc.*, 219 F.3d 855, 858 (8th Cir. 2000) (finding that statutory arbitrator's factual findings precluded relitigation of those issues in ADA claim).

Guided by the reasoning in *Elliott* and *Solimino*, this Court finds that Rehabilitation Act § 504 is different from other federal antidiscrimination laws—the ADA, Title VII, and the ADEA—for which courts have found that Congress "did not intend unreviewed state administrative proceedings to have preclusive effect" on claims. *Elliott*, 478 U.S. at 789. For that reason, the Court finds that claims under section 504 of the Rehabilitation Act are subject to traditional preclusion analysis. *See Elliott*, 478 U.S. at 796. Indeed, the Rehabilitation Act differs from the ADA and Title VII in several significant ways.

Section 504 of the Rehabilitation Act lacks any reference to state proceedings from which congressional intent to abrogate common law preclusion can be inferred. For example, Title VII provides that the EEOC give "substantial weight" to final findings and orders made by state authorities, 42 U.S.C. § 2000e-5(b), clearly suggesting that

Congress contemplated federal action following a state administrative action and that the resolution of the state administrative proceeding not have preclusive effect. "[I]t would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." *Elliott*, 478 U.S. at 795. But there are no analogous provisions in the Rehabilitation Act. What is more, the Rehabilitation Act also lacks any reference to state proceedings for filing deadlines—in contrast to the ADEA—from which the Supreme Court inferred congressional intent to abrogate preclusion in *Solimino*. 501 U.S. at 111.

Likewise, Title VII includes detailed provisions for a *de novo* trial in federal court, § 2000e-5(f), from which the *Elliott* court surmised Congress's intent to abrogate preclusion in federal court actions. Unlike Title I of the ADA, which explicitly incorporates Title VII remedies, section 504 of the Rehabilitation Act lacks any provisions for a *de novo* trial.[8] Instead, the remedies under section 504 of the Rehabilitation Act include only "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5)." 29 U.S.C. § 794a(a)(2). In light of that language, section 504 of the Rehabilitation Act provides a private right of action that is "coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964." *Barnes v. Gorman*, 536 U.S. 181, 185 (2002). In

---

[8] Those enforcement mechanisms are, however, available to claimants under section 501 of the Rehabilitation Act, which is not relevant to Van Ever-Ford's claims.

contrast to the detailed trial provisions of Title VII, Title VI does not even provide an explicit private right of action.[9]

Although the Supreme Court made clear in *Solimino* that there is "nothing talismanic" about the Title VII enforcement provisions, 501 U.S. at 112, the language and legislative history of the Rehabilitation Act provide no substitute evidence of Congress's intent to abrogate common law rules of preclusion. In *Solimino*, the Court found "an implication that the federal courts should recognize no preclusion by state administrative findings with respect to age-discrimination claims" because the ADEA requires a complainant to "first pursue his claim with the responsible state authorities before filing in federal court." 501 U.S. at 110-11. Such an exhaustion requirement contemplates federal actions after state claims and therefore no preclusive effect for state administrative decisions. But section 504 of the Rehabilitation Act has no similar exhaustion requirement. *See Freed v. Consolidated Rail Corp.*, 201 F.3d 188, 194 (3d Cir. 2000) ("nothing in the language of section 504 or Title VI requires administrative exhaustion"); *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 158 (E.D.N.Y. 2010). Indeed, at least one court has found that the Rehabilitation Act's lack of an exhaustion

_____

[9] The Supreme Court recognized a private right of action in Title VI in *Cannon v. University of Chicago*, 441 U.S. 677, 703 (1979). Congress ratified that holding—and reaffirmed its application to the Rehabilitation Act—in the Rehabilitation Act Amendments of 1986, Pub. L. No. 99-506, 100 Stat. 1845 (1986). *See also Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) ("Congress has since ratified *Cannon's* holding."); *see also Barnes*, 536 U.S. at 185. The parallel remedies in section 504 of the Rehabilitation Act and Title VI make sense: both statutes prohibit discrimination by the recipients of federal funding through Congress's spending power. And traditional preclusion principles apply to Title VI claims. *See Heike v. Cent. Mich. Univ. Bd. of Trs.*, 573 F. App'x 476, 482-83 (6th Cir. 2014) (holding that prior law suit precluded Title VI claims); *Klein v. City of New York*, 2011 WL 5248169, at *7 (S.D.N.Y. Oct. 28, 2011) (administrative decision reviewed in state court precluded Title VI claim and others).

requirement suggests that issue preclusion might well be appropriate. *See Dertz v. City of Chicago*, 1997 WL 85169, at *10 (N.D. Ill. Feb. 24, 1997) (observing that Title II of the ADA and the Rehabilitation Act do not require exhaustion of administrative remedies, which "indicates a Congressional intent that the doctrine of issue preclusion may apply to subsequent claims under these provisions").

Title I of the ADA explicitly incorporates the enforcement provisions in Title VII, leading courts to infer that Congress intended that state administrative decisions not preclude federal actions under the ADA. *See, e.g.*, *Thomas*, 150 F.3d at 39 n.5. Section 504 of the Rehabilitation Act, by contrast, does not include or incorporate these enforcement provisions, so that inference is not appropriate here.[10]  Because this Court

---

[10] Title I of the ADA prohibits discrimination in employment and incorporates the Title VII enforcement remedies— upon which the Supreme Court relied in *Elliott*—for its remedies. *See* 42 U.S.C. §§ 12112, 12117.  Title II of the ADA prohibits discrimination in public programs and incorporates the remedies under the Rehabilitation Act. *See* 42 U.S.C. §§ 12132, 12133.  The operative provisions of the ADA that provide private causes of action—Title I and Title II—thus distinguish between causes of action for employment-based discrimination and for discrimination in the provision of public programs.  Section 504 of Rehabilitation Act—the section under which Van Ever-Ford brings her claim—does not distinguish between employment-based discrimination and discrimination in programs receiving federal financial assistance to which it applies, however, and that might seem to blur the lines between the respective enforcement provisions in the Rehabilitation Act and Titles I and II of the ADA.  In fact, Van Ever-Ford invites the Court to treat the Rehabilitation Act as it would treat a Title I ADA claim for preclusion purposes.  Docket Item 115 at 9.  But it is only Title II, not Title I, of the ADA that incorporates the same remedies as the Rehabilitation Act.  *Cf. Carpenter-Barker v. Ohio Dep't of Medicaid*, 187 F. Supp. 3d 881, 887 (S.D. Ohio 2016) (finding unreviewed agency decisions had no preclusive effect under Rehabilitation Act by equating the Rehabilitation Act to the ADA when the plaintiff brought a claim for discrimination in public services under the Rehabilitation Act and Title II of the ADA).  There is no reason that the Rehabilitation Act should receive a parallel interpretation to Title I of the ADA. Title II of the ADA is the proper analogue, and, unlike Title I, Title II claims *are* subject to common law preclusion principles.  *See, e.g.*, *Johnson-Goeman v. Michigan Dep't. of Commerce*, 1995 WL 313707, at *4-5 (W.D. Mich. Jan. 18, 1995); *cf. K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1101 (9th Cir. 2013) ("[N]othing in our holding should be understood to bar district courts from applying ordinary principles of

can find no expression of congressional intent to the contrary, the findings of the Division of Human Rights may preclude Rehabilitation Act claims.  *See, e.g.*, *Williams v. Oregon State Bd. of Parole and Post-prison Supervision*, 2018 WL 4558985, at *3 (D. Or.  Sep. 21, 2018) ("[S]tate administrative proceedings likely have preclusive effect over [Rehabilitation Act] and ADA Title II claims."); *Day v. Minnesota*, 2007 WL 4321999, at *8 (D. Minn. Dec. 6, 2007) (collecting cases); *Johnson-Goeman v. Michigan Dept. of Commerce*, 1995 WL 313707, at *5 (W.D. Mich. Jan. 18, 1995) ("[T]he Court concludes that the doctrine [of administrative estoppel] applies to claims brought pursuant to both Section 504 of the Rehabilitation Act of 1973 and Subchapter II of the ADA.").

The plaintiff urges this Court to follow dicta in *Staats*, *supra*, to conclude that state administrative decisions not reviewed by state courts do not preclude subsequent federal actions.  In *Staats*, the plaintiff brought claims under both the ADA and the Rehabilitation Act, and the Seventh Circuit opined that "the logic of *Kremer* and *Elliott* applies equally to other federal anti-discrimination statutes."  *Staats*, 220 F.3d at 514.  But the administrative decision in *Staats* had been reviewed by a state court, *id.* at 514-15, so there was little question about whether that court decision would preclude a subsequent action.  Thus, the *Staats* court's broad statement that the logic of *Elliott* applies to "other federal anti-discrimination statutes," *id.* at 514, including the

_____

issue and claim preclusion in cases raising both IDEA and Title II claims where the IDEA administrative appeals process has functionally adjudicated some or all questions relevant to a Title II claim in a way that precludes relitigation.").

Rehabilitation Act, was dicta "not essential to the . . . holding." *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 243 (2d Cir. 2011).

Whether dicta or not, the language in *Staats* upon which the plaintiff relies has been well received in other courts. *See Joseph*, 648 F.3d at 64 n.6; *Carpenter-Barker v. Ohio Dep't of Medicaid*, 187 F. Supp. 3d 881, 887 (S.D. Ohio 2016) ("Although *Elliott* . . . involved discrimination claims arising under Title VII of the Civil Rights Act of 1964, the same principle applies to ADA and Rehabilitation Act claims.") (citing *Staats*, 220 F.3d at 514). But those precedents do not bind the Court in this case. Neither the Second Circuit in *Joseph* nor the district court in *Carpenter-Barker* analyzed the issue before this Court. Indeed, the Second Circuit's passing approval of *Staats* was itself dicta since the plaintiff in *Joseph* did not make a claim under the Rehabilitation Act and neither side raised an issue regarding the district court's preclusion analysis. *See Joseph*, 648 F.3d at 64 n.6. And those courts that have analyzed administrative estoppel under section 504 of the Rehabilitation Act reach the same conclusion as this Court: that traditional preclusion principles apply. *See, e.g.*, *Williams*, 2018 WL 4558985, at *3; *Day*, 2007 WL 4321999, at *8; *Johnson-Goeman*, 1995 WL 313707, at *4-5. So the sweeping dicta in *Staats* regarding all federal antidiscrimination statutes does not tip the balance here.

### 2. Van Ever-Ford's Claims

Because there is no evidence of congressional intent to the contrary, the state administrative decision here will preclude Van Ever-Ford's claims if it resolved issues of fact essential to her claim against her and if she had an adequate opportunity to litigate those issues. *See Elliott*, 478 U.S. at 788. "Federal courts must give the agency's

factfinding the same preclusive effect to which it would be entitled in the State's courts."
*Id.* For that reason, New York law governs the preclusive effect of the Department of
Human Rights decision.

The preclusive effect of a judgment is defined both by claim preclusion and issue
preclusion, and the defendants argue that Van Ever-Ford's claims here are barred
under both doctrines. Under claim preclusion, "a final judgment forecloses 'successive
litigation of the very same claim, whether or not relitigation of the claim raises the same
issues as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (*quoting New
Hampshire v. Maine*, 532 U.S. 742, 748 (2001). "Issue preclusion, in contrast, bars
'successive litigation of an issue of fact or law actually litigated and resolved in a valid
court determination essential to the prior judgment,' even if the issue recurs in the
context of a different claim." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S at 748-49).
The Court reaches only issue preclusion here because it finds that Van Ever-Ford is
barred from relitigating issues essential to her claim decided against her in the Division
of Human Rights proceeding.

New York courts apply issue preclusion when "there [is] an identity of issue which
has necessarily been decided in the prior action and is decisive of the present action"
and when there has "been a full and fair opportunity to contest the decision now said to
be controlling." *Buechel v. Bain*, 97 N.Y.2d 295, 303-04, 766 N.E.2d 914, 919 (2001).
"In the application of collateral estoppel with respect to administrative determinations,
the burden rests upon the proponent of collateral estoppel to demonstrate the
identicality and decisiveness of the issue, while the burden rests upon the opponent to
establish the absence of a full and fair opportunity to litigate the issue in [the] prior

action or proceeding." *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 501, 467 N.E.2d 487, 491 (1984).

### a. Identity of the Issues

 "To establish a *prima facie* case of employment discrimination under the Rehabilitation Act, a plaintiff must prove that: (1) he is an 'individual with a disability,' (2) he was 'otherwise qualified' for a position, (3) he was denied that position on the basis of his disability, and (4) the employer receives federal funds."  *D'Amico v. City of New York*, 132 F.3d 145, 150 (2d Cir. 1998).  The defendants argue that Van Ever-Ford cannot make out a *prima facie* case because she is precluded by the Division of Human Rights determination from contesting the second element—that she was "otherwise qualified" for her position.  Van Ever-Ford argues that the Division of Human Rights did not decide this issue because the ALJ applied the standard under the NYSHRL, which she argues is different from the Rehabilitation Act standard.  This Court agrees with the defendants that the issue before the Division of Human Rights is sufficiently identical to the second element of Van Ever-Ford's prima facie case in the present action to preclude her from relitigating it.

In his Recommended Findings of Fact, Opinion and Decision, and Order, the ALJ noted that:

> [A] complainant must demonstrate that: (1) she meets the definition of an individual with a disability; (2) ***her disability did not prevent her from performing her duties in a reasonable manner with or without reasonable accommodations***; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination.  *Pace College v. Commission on Human Rights of the City of New York*, 38 N.Y.2d 28, 377 N.Y.S.2d 471 (1975).

Docket Item 112-8 at 12 (emphasis added).  The ALJ found that Van Ever-Ford "did not meet the second element of a prima facie case" because her "disabilities prevented her from doing her job *in a reasonable manner* where attendance was imperative."  *Id.* at 13 (emphasis added).  While there may be a semantic difference between being able to "perform[] her duties in a reasonable manner" and being "otherwise qualified" for a job, the two standards are the same for all intents and purposes.

In fact, the Second Circuit has held that the "reasonable manner" standard under the NYSHRL is the same as "otherwise [being] qualified."  *See Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010) (addressing "otherwise qualified" standard under the ADA).  Other courts also have noted the similarity of standards under the NYSHRL, the ADA, and the Rehabilitation Act.  *See, e.g.*, *Hendler v. Intelecom USA, Inc.*, 963 F. Supp. 200, 210 (E.D.N.Y. 1997) ("The legislative history of the [NYSHRL] indicates that it was intended to cover the same types of disabilities as protected under the ADA and the Rehabilitation Act.") (dictum); *Cobian v. City of New York*, 1996 WL 583385, at *2 n.6 (S.D.N.Y. Oct. 10, 1996) ("the applicable sections of the three disability statutes set forth virtually identical elements.").  Moreover, section 504 of the Rehabilitation Act explicitly provides that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the [ADA]."  29 U.S.C. § 794(d).  So the language of the Rehabilitation Act explicitly equates its "otherwise qualified" standard with the standard in the ADA, and with that to the NYSHRL standard.  *See Kinneary*, 601 F.3d at 158.

The ALJ found that Van Ever-Ford could not perform her job in a reasonable manner even with reasonable accommodations.  Docket Item 112-8 at 12-13.  So whether she was otherwise qualified for the position—one of the essential elements of her claim under the Rehabilitation Act—"has necessarily been decided [against her] in the prior action."  *Buechel*, 97 N.Y.2d at 303-04.

### b.  Full and Fair Opportunity to Litigate

The party opposing issue preclusion bears the burden of showing that the issues on which preclusion is sought were not fully and fairly litigated.  "[T]he fundamental inquiry is whether relitigation should be permitted in a particular case in light of fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results."  *Buechel*, 97 N.Y.2d at 304 (internal quotations omitted).  "A determination as to whether a prior action or proceeding provided a full and fair opportunity to litigate an issue requires consideration of the 'realities of the prior litigation, including the context and other circumstances which may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him.'"  *Washington v. N.Y.C. Dep't of Educ.,* 2017 WL 4687982, at *7 (S.D.N.Y. Oct. 16, 2017), *aff'd sub nom. Washington v. New York City Dep't of Educ.*, 2018 WL 3342324 (2d Cir. July 9, 2018).

"[F]ederal courts in New York have undertaken the somewhat awkward task of anticipating what preclusive effect New York courts would afford an NYSDHR decision." *Vargas v. City of New York*, 2008 WL 361090, at *4 (S.D.N.Y. Feb. 11, 2008).  The analysis depends largely on whether the state investigation or hearing process sufficiently addressed the plaintiff's claims.  *Compare Kirkland v. City of Peekskill*, 828

F.2d 104, 108, 110 (2d Cir. 1987) (finding that Division of Human Rights investigation preceding no-probable-cause determination precluded subsequent §§ 1981, 1983, 1985, and 1986 claims) *with Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 735-36 (2d Cir. 2001) (finding that claims were not "adequately tested" or "fully aired" by Division of Human Rights no-probable-cause determination).  When the Division of Human Rights finds probable cause and holds a hearing, its determinations are far more likely to have preclusive effect.  *Compare DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 118 (2d Cir. 1987) (finding Division of Human Rights determination precluded § 1983 claim, though not Title VII claim, when claimant had civil service hearing prior to removal and "fleshed out" argument) *with United States v. E. River Hous. Corp.*, 90 F.Supp.3d 118, 153 (S.D.N.Y. 2015) ("It is highly relevant, though not dispositive, that DHR held no hearing.").[11]

Here, Van Ever-Ford had a hearing before the Division of Human Rights.  The hearing lasted a full day, included testimony from ten witnesses, and admitted 21 exhibits into evidence.  Docket Item 112-7.  Van Ever-Ford was represented by counsel at that hearing, and she was afforded the opportunity to test the defendants' evidence.  *See id.*; *cf. Kosakow*, 274 F.3d at 735 (finding Division of Human Rights hearing did not

_____

[11] In contexts outside the NYSHRL, adequate hearing procedures strongly support giving administrative determinations preclusive effect.  *See Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free School Dist.*, 411 F.3d 306, 312 (2d Cir. 2005) (finding "full and fair opportunity" where plaintiff engaged in "extensive litigation procedures for hearings, including motion practice, bill of particulars, mandatory disclosure, discovery, subpoena power, right to counsel, cross-examination, testimony under oath, and a full record" under N.Y. Educ. Law); *Quattrone v. Erie 2 Chautaqua-Cattaragus Bd. of Coop. Educ. Serv.*, 2011 WL 4899991, at *7 (W.D.N.Y. Oct. 13, 2011) (Curtin, J.) (finding preclusion when "[p]laintiff was represented by counsel in the presentation and appeal of her Article 78 petition in the state courts, and the record reflects that she was at all times afforded a full and fair opportunity for review.").

preclude relitigation of issues when the plaintiff had acted pro se and had no hearing where she could confront witnesses against her). She called several witnesses, testified herself, and presented evidence to support her claim. Docket Item 112-7. Moreover, Van Ever-Ford was given an opportunity to challenge the ALJ's negative determination, and she did just that. Docket Items 112-9, 112-10.

Van Ever-Ford has not shown how the litigation at bar gives her an opportunity to litigate her claim of disability discrimination that she did not have before the Division of Human Rights. Indeed, her argument in the case at bar is virtually identical to the one she raised before the Division of Human Rights. *Compare* Docket Item 112-1 *with* Docket Item 102.

Van Ever-Ford argues the Division of Human Rights hearing should not have preclusive effect because, unlike this Court under the Rehabilitation Act, the Division of Human Rights could not award attorney's fees. Docket Item 115 at 6. But the fact that the NYSHRL does not provide for attorney's fees does not suggest that a plaintiff would necessarily be any less motivated in pursuing such a claim. In fact, if Van Ever-Ford had succeeded before the Division of Human Rights, she could later have sought attorney's fees in federal court under the Rehabilitation Act. *Cf. Ballard v. HSBC Bank USA, N.A.*, 827 F.Supp.2d 187, 191-92 (W.D.N.Y. 2011) (declining to preclude Title VII action for attorney's fees by plaintiff who succeeded before Division of Human Rights because Division of Human Rights did not have the power to award attorney's fees).

Furthermore, once Van Ever-Ford filed her complaint with the Division of Human Rights, fully and fairly litigating her claim before the Division of Human Rights became her only path to relief under state law. N.Y. Exec. Law § 297(9) provides that

> Any person claiming to be aggrieved by an unlawful discriminatory practice **shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint [with the Division of Human Rights]** . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. EXEC. LAW § 297(9) (emphasis added).  Indeed, Van Ever-Ford could not have withdrawn her complaint to seek redress in New York's courts, *see Emil v. Dewey*, 49 N.Y.2d 968, 406 N.E.2d 744 (1980); instead she had to exhaust her claim with the Division of Human Rights and then, if necessary, challenge its determination in a state court Article 78 proceeding.  *See Kirkland*, 828 F.2d at 109.  For that reason as well, Van Ever-Ford has not shown "circumstances which may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against [her]."  *Washington*, 2017 WL 4687982, at *7.  So Van Ever-Ford's Division of Human Rights proceeding was a full and fair opportunity to litigate her claim, entitled to preclusive effect in this Court.

The Division of Human Rights's determination that Van Ever-Ford could not perform her job in a reasonable manner precludes her from relitigating that issue in this Court.  Because that finding is essential to her Rehabilitation Act claim, she cannot succeed on that claim.  Therefore, the defendants are entitled to summary judgment on Van Ever-Ford's claims under the Rehabilitation Act.

### B.    ADA Claims

Van Ever-Ford also requests injunctive relief under the ADA.

"As a general matter, the Eleventh Amendment bars suits of any sort against a state in federal court unless the state has consented to be sued or Congress has

expressly abrogated the state's immunity." *Kostok v. Thomas*, 105 F.3d 65, 68 (2d Cir. 1997). The ADA did not abrogate states' sovereign immunity. *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001). In *Ex parte Young*, 209 U.S. 123 (1908), however, the Supreme Court held that the Eleventh Amendment does not bar a suit for prospective injunctive relief against a state official alleged to have violated federal law.

> If the act which the state [officer] seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

*Id.* at 159-60. "[T]he ADA still prescribes standards applicable to the States . . . [which] can be enforced by . . . private individuals in actions for injunctive relief under *Ex parte Young*." *Garrett*, 531 U.S. at 374 n.9. "[C]laims for reinstatement to previous employment satisfy the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007).

The *Ex parte Young* exception "only applies in circumstances where the state official has the authority to perform the required act." *Schallop v. New York State Dep't of Law*, 20 F. Supp. 2d 384, 391 (N.D.N.Y. 1998). Courts in this circuit have dismissed claims when plaintiffs did not plead that a state official sued under *Ex parte Young* had the authority to carry out the requested relief. *See Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 436 (S.D.N.Y. 2017) ("an injunction against [the co-defendant] Soto is inappropriate because Plaintiff has not pled that she has the authority or ability to offer him a job with RPC."); *Perciballi v. New York*, 2010 WL 3958731, at *4 (S.D.N.Y.

Sep. 28, 2010) (dismissing claims because the plaintiff, "Perciballi[,] fails to allege that any Individual Defendant has the authority to reinstate him.").

Courts also have dismissed such claims when "the inability of any equitable relief the court could grant to remedy the plaintiffs' alleged injuries" is clear. *Doran v. New York State Dep't of Health Office of Medicaid Inspector Gen.*, 2017 WL 836027, at *9 (S.D.N.Y. Mar. 2, 2017) (dismissing official capacity suits against those defendants who were no longer employed at the Office of Medicaid Inspector General). In fact, district courts will parse which of several individual defendants have the authority to execute an injunction under *Ex parte Young* and then dismiss claims against those defendants who do not have such authority. *See id.*; *Siani v. State Univ. of N.Y. at Farmingdale*, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014) ("Here, only Keen has the authority to reinstate plaintiff . . . [so] the official-capacity claims against any of the individual defendants besides Keen are dismissed."); *Schallop*, 20 F. Supp. 2d at 391 (dismissing suit against certain defendants when there was "no evidence" that those defendants "possessed the authority to reinstate" but maintaining it against other defendants for whom the law and the record provided evidence of reinstatement authority).

Van Ever-Ford alleges in her amended complaint that the Commissioner has the "authority and power to discipline, terminate and reinstate all employees." Docket Item 102 at 2. The defendants disagree. Docket Item 114 at 17. They admit that the Commissioner has statutory appointment authority, but they maintain that her authority is constrained by the civil service laws.

> The commissioner or his or her designee may, within the amounts appropriated therefor, appoint and remove *in accordance with law and applicable rules of the state civil service commission*, such officers and employees of the office of mental

health as are necessary for efficient administration and shall administer the office's personnel system in accordance with such law and rules.

N.Y. MENTAL HYG. LAW § 7.19 (McKinney) (emphasis added).

In reply, Van Ever-Ford cites New York's Rules for the Classified Service, which permit a terminated probationary employee to bypass the Civil Service Exam. *See* 4 N.Y. COMP. CODES. R.& REGS. tit. 4, § 4.5(h) (2019). But the defendants argue that bypassing the Civil Service Exam allows only for restoration to a list of eligible potential appointees to a position, not blanket appointment of anyone. Docket Item 116 at 7. And the defendants also submitted the declaration of an Office of Mental Health employee affirming that Commissioner Sullivan does not have the authority to reinstate Van Ever-Ford to her prior position. Docket Item 113.

"*Ex parte Young* allows for jurisdiction over . . . [i]ndividual [d]efendants inasmuch as it is in the performance of their duties that there may be an ongoing violation of federal law." *CSX Transp., Inc. v. New York State Office of Real Prop. Servs.*, 306 F.3d 87, 99 (2d Cir. 2002). "In defining whether a state official is a proper party to a suit seeking to enjoin the enforcement of an allegedly unconstitutional statute, the Supreme Court has held: '[I]t is plain that such officer must have some connection with the enforcement of the act.'" *Nolan v. Cuomo*, 2013 WL 168674, at *9 (E.D.N.Y. Jan. 16, 2013) (quoting *Ex parte Young*, 209 U.S. at 157); *see also Schulz v. Williams*, 44 F.3d 48, 61 n.13 (2d Cir. 1994) ("It is well-settled that a state official may properly be made a party to a suit seeking to enjoin the enforcement of an allegedly unconstitutional act if that official plays some role in the enforcement of the act.") (internal citations omitted). Thus, to obtain injunctive or declaratory relief against an official, there must be a direct connection between the official and the illegal action. *See Davidson v.*

*Scully*, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001) ("[A]ctions involving claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action." (internal citations omitted)).

Courts in this circuit have found several reasons why a state official might have the requisite reinstatement authority to support jurisdiction under *Ex parte Young*. For example, statutory appointment authority is sufficient. *See Schallop*, 20 F. Supp. 2d at 391 (the attorney general has sufficient authority to appoint assistant attorney generals under N.Y. Exec. Law § 62 for *Ex parte Young* to apply). The record also might establish whether the defendants do or do not have authority. *See Loren v. Levy*, 2003 WL 1702004, at *11 (S.D.N.Y. Mar. 31, 2003) ("Neither [defendant], personally or through their respective agencies, has any responsibility for hiring or dismissing teachers from the Program. Rather, as the undisputed facts show, Loren was hired and fired by Board employees, without any input from any employee of the Department or CUNY.") (dictum).[12] And at least one court has ordered reinstatement without deciding which of several defendants might have had the authority to reinstate a terminated employee. *See Smith v. State Univ. of N.Y.*, 2003 WL 1937208, at *5 n.5 (N.D.N.Y. Apr. 23, 2003) ("The Court notes that, at this time, it is not able to discern which of the

_____

[12] In *Loren*, the court observed undisputed facts. *Loren*, 2003 WL 1702004, at *11. Here, the affidavit about Commissioner Sullivan's authority that the defendants submitted, Docket Item 113, asserts a fact that Van Ever-Ford disputes, Docket Item 115 at 11. That is a material issue of disputed fact regarding Commissioner Sullivan's authority and prevents this Court from awarding summary judgment. And even apart from that dispute, N.Y. Mental Hyg. Law § 7.19 provides the Commissioner appointment authority, and the plaintiff has raised issues about her violation of federal law "inasmuch as it is in the performance of [those] duties that there may be an ongoing violation of federal law." *CSX Transp. Inc.*, 306 F.3d at 99.

individual Defendants, other than perhaps Defendant Barnhart, has the authority to reinstate Plaintiff to his former position should he succeed on his claims.").

The instant case is not one in which only some defendants have authority and others do not. *See, e.g.*, *Siani*, 7 F. Supp. 3d at 317; *Schallop*, 20 F. Supp. 2d at 391*.* On the contrary, if any state official has authority here, it is the Commissioner. And some state official *must* have the authority to do what *Ex parte Young* requires; otherwise, states might avoid its application by simply not explicitly giving authority to any state official. *See Doran*, 2017 WL 836027, at *9 (court dismissed an individual capacity suit because defendant did not have authority to grant requested relief, but another individual defendant did have authority to provide relief); *Siani*, 7 F. Supp. 3d at 317 (same); *Schallop*, 20 F.Supp.2d at 391 (same). Furthermore, N.Y. Mental Hyg. Law § 7.19 clearly provides the Commissioner the authority to grant reinstatement, albeit subject to the civil service rules. Docket Item 114 at 17. So as long as the civil service rules are satisfied, the Commissioner has authority to grant the relief Van Ever-Ford seeks. And the Commissioner has a connection to the illegal action necessary for Van Ever-Ford to obtain injunctive and declaratory relief. *See, e.g.*, *Davidson*, 148 F. Supp. 2d at 254.

The defendants argue that the Commissioner "cannot bypass Civil Service Rules and Regulations, and if the Court ordered her to do so she would be in violation of State law." Docket Item 114 at 18. That may be true. But state laws cannot insulate the Commissioner from complying with federal laws. The "state has no power to impart to [the Commissioner] any immunity from responsibility to the supreme authority of the United States." *Ex parte Young*, 209 U.S. at 160. The Supremacy Clause simply does

not permit an ongoing violation of federal law, regardless of state laws that require the state official's action.  *See* 13D Charles Alan Wright et al., Federal Practice and Procedure § 3566, 292 (3d ed. 2008) ("The best explanation of *Ex parte Young* and its progeny is that the Supremacy Clause creates an implied right of action for injunctive relief against state officers who are threatening to violate the federal Constitution and laws.") (quoted in *Burgio and Campofelice, Inc. v. New York State Dep't of Labor*, 107 F.3d 1000, 1006 (2d Cir. 1997)); *see also Idaho v. Coeur D'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (noting that the *Ex parte Young* principle is designed to "ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law.").  So state civil service regulations do not insulate the Commissioner from reappointing an employee who has been dismissed in violation of federal law.

For all these reasons, this Court has jurisdiction under *Ex parte Young* to enjoin the Commissioner's possible violation of federal law.  Therefore, the defendant's motion for summary judgment on Van Ever-Ford's ADA claim is denied.

## CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is GRANTED in part and DENIED in part.  Van Ever-Ford's claims under the Rehabilitation Act are dismissed, but her claim for injunctive relief under the ADA survives.

SO ORDERED.

Dated:     April 30, 2019
           Buffalo, New York


                                        _s/ Lawrence J. Vilardo_____
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE